## HALL v. GILDERSLEEVE.

1. A stolen horse, left by the thief tied to a post in a public road, is not an estray within the purview of the New Jersey statute.
2. Nor will such horse be brought under the statute, if the person finding him remove him and tie him in a private stable.

*Error to Circuit Court of the county of Somerset.*

The suit was in replevin, and the following is the case as certified :

The horse in controversy being the property of Hall, was stolen from his stable on the night of December 27th, 1868, and taken by the thief to South Orange, in the county of Essex, and there left tied to a post in the public highway, on the lands of the Methodist Church. Hall made diligent effort to recover the horse, and to apprehend the thief. The horse was found on the morning of December 28th, 1868,

by Ralph Gildersleeve, tied as above stated; and on the evening of that day, to wit, at about four and a half o'clock, the said horse having stood at the fence aforesaid, from between seven and a half o'clock and eight o'clock A. M., of the same day, till about four and a half o'clock P. M., was untied and taken to the stable of John Gildersleeve, by Ralph, his son, and stabled there; but it did not appear that the horse was so taken and stabled by Ralph Gildersleeve, by the direction or with the knowledge of John Gildersleeve, but John did know that the horse stood tied in the public highway, on the Methodist Church property; nor did it appear when John first knew the horse had been removed to his stable. The horse was afterwards reported to the town clerk, who made the entries required by law, and the horse was afterwards sold as an estray, by the overseer of the poor, pursuant to the statute, and purchased by the plaintiff, who brought her to the county of Somerset. The horse escaped from the enclosure of the plaintiff on August 24th, 1869, and came unattended to the premises of Hall.

It did not appear whether said horse, while standing as aforesaid, on said church property, was fed or not.

The finding of the court is to be regarded as a special verdict, and it is agreed that either party shall be at liberty to bring a writ of error.

Argued at February Term, 1873, before BEASLEY, Chief Justice, and Justices BEDLE, DALRIMPLE and DEPUE.

For plaintiff in error, *A. V. Van Fleet.*

For defendant, *H. M. Gaston.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. A stolen horse was tied by the thief to a post in a highway, and there abandoned. A person finding it in that situation took it to the stable of his father, the latter being aware that it had stood tied in the public highway, but it was not shown that he consented to

or knew of its being brought to his stable. The father afterwards had the animal treated as an estray, and it was sold as such under the statute. The present controversy arises between the original owner and the purchaser at this sale.

In my estimation, the sale in question cannot be justified. The horse, while tied to the post in the road, was not an estray, within the purview of the statute. A stolen horse abandoned by the thief in his flight, is a waif; but such waif will become an estray so as to be the subject of sale, if it be found straying upon improved land. But no one but the owner of such land can make the statutory seizure and sale, and the consequence is, that even if the horse in question is to be regarded, while in the public road, as an estray, the present sale will not be helped, because the highway was not improved land within the meaning of the act, nor was the person procuring such sale the owner of the land constituting the highway.

But the horse was taken up in the road and put in a stable near by, and it is contended that the owner of such stable had the right to treat such animal as an estray. But it does not seem to me that this is even plausible. If an animal be brought on to the property of another without his knowledge and against his will, the person making such invasion will, under ordinary circumstances, be guilty of a trespass, and can be punished accordingly; but I think the suggestion is novel that the animal thus intruded can be seized and held as an estray. In the present case, the son of the owner of the stable found this horse in the highway and took it into his possession; this act made him the owner of the horse as against everybody but the true owner. As between himself and his father he was in law the owner of the animal in question, for there can be no doubt that Mr. Dane, in his Abridgment of American Law, correctly states the legal rule in saying, that where there are no controlling provisions by statute, estrays and waifs belong to the finder in the absence of the owner. *Chap.* 76, § 21. It is to be remembered that a person who finds property, either animate or inanimate, and takes it

into possession, becomes responsible to its owner for its safety. He is bound to the exercise of ordinary care with respect to it, and to yield it up when demanded. In cases of ordinary finding, a lien, even for expenses, cannot be claimed. This is the doctrine of *Nicholson* v. *Chapman*, 2 *H. Bl. R.* 254.

It appeared in that case, that a quantity of lumber lying along the banks of a stream had become accidentally loosened and carried away by the tide, and had been found and taken up by the defendant. The decision was, that the finder was bound to deliver the lumber up to the owner on demand, though nothing was tendered by way of compensation for his trouble and expense. The case of the taking up of a straying animal, is put by the court as an illustration of the usual liability of the finder of lost property to the owner. In referring to the legal effect of the facts then under consideration, the official opinion says : " It is the same as if a horse had strayed and was not taken as an estray by the lord under his manorial rights, but was taken up by some good natured man, and taken care of by him till, at some trouble, and perhaps at some expense, he had found out the owner. So it would be in every other case of finding that can be stated."

It seems to me evident, then, that the son must, in this case, be treated as the finder of this horse. A special property vested in him as finder ; he could have maintained trover or replevin, if the animal had been taken from him against any person so taking it, except the owner. The voluntary possession of it at once made his responsibility to such owner complete and absolute. I cannot see the least uncertainty as to his rights or responsibility. Nor can I have any more doubt, that the title of this person did not become divested by his tying the horse in the stable of his father. If such divesture followed as a legal consequence of such act, then the finder of a lost article can never safely take it upon the property of another person. Suppose the finder of this horse had retained it in his possession for a week or a month, and had then put it in the stable of his

father, or in that of a stranger, could the animal have been sold as an estray ? But lapse of time does not strengthen the rights of the finder of lost property, and I can see no other ground on which the defence can stand in this case, except on the general proposition, that if a person having a general or special property in a horse, shall put it in the stable of another without permission, the owner of such stable may have it sold under the statute as an estray.

Such an application of the statute as this, appears to me altogether unreasonable. This act was originally passed in 1797, and at that time there being extensive tracts of uncultivated land, upon which cattle were turned, they would often stray away, on to the cultivated lands of distant land owners. During the inclement season, between the 1st of November and the 1st of April, such land owners were often obliged, from motives of humanity, to take care of such estrays, and it was to lighten this burthen that this statutory provision was made. The remedy thus appointed partakes somewhat of the nature of the common law proceeding in case of a distress of animals damage feasant. Its object was to give to the owner of the invaded lands a lien for his expense and trouble upon the trespassing cattle, and the power to enforce such lien by sale. It is a summary remedy, and is not to be extended to instances not clearly within the statutory plan. I think it would be an entire misapplication to extend it to the case of an animal left voluntarily upon property by a person in the lawful possession of such animal. The statute was plainly not intended as a remedy for such a wrong. For such a transgression of the rights of the property holder the law, by its other methods, affords ample redress. Nor do I perceive any force in the suggestion that unless the operation of this statute is widely extended, that a person who finds an animal whose owner is unknown is at great disadvantage, and has no adequate mode of redress. It is asked, under such circumstances, what is the owner of the stable to do? The answer is, he has the same remedies that he has if the animal is obtruded upon him at any time between April and

November. The act relating to estrays applies only to the interim between the 1st of November and the 1st of April. It certainly was not intended to be a relief in the case of an animal not being an estray, that might be unlawfully left upon property. The horse, in the present case, was not liable to be treated as an estray, and the sale was, consequently, invalid.

This result, I think, satisfies the demands of justice in this case. The plaintiff in error was the owner of this property, which was taken out of his possession feloniously and without fault on his part. The defendant, when he purchased at the sale by the overseer of the poor, was bound to know that the title of the unknown owner could not be vacated, except under a legal seizure and formal sale. This was the risk he ran, and such risk is always represented in the price which the thing sold brings. The conduct of the parties who brought about the sale is not entitled to favorable consideration. The treating this horse as an estray was a subtle contrivance on the part of the father and son, that would stand only if its foundation had been found legally impregnable.

This not being the case, the judgment must be reversed.

This disposes of the case, and it is not necessary to consider whether, if a different view had been taken of the legal principles involved, such result could have benefited the defendant in error, on the ground that the facts as stated do not make up a case in his favor. The form of the case as stated appears very defective, but it is not deemed necessary to pass upon its sufficiency.

Justices BEDLE and DEPUE concurred.

DALRIMPLE, J., dissenting. The horse, the title to which is in question in this suit, was found, the owner being unknown, by one John Gildersleeve, on his improved land, between the 1st day of November and the 1st day of April. He duly reported him as an estray. The entries required by law were made, and the horse afterwards sold as an estray,

according to the statute, and purchased by the defendant in error. He escaped from the defendant, and strayed to the premises of plaintiff in error, and was by him taken possession of. The defendant brought an action of replevin, and recovered. The legal definition of an estray in this state, is, neat cattle, horses or sheep found upon improved lands, between the 1st day of November and the 1st day of April, whose owner is unknown. *Nix. Dig., p.* 12, § 8 ; *IX Petersdorff's Abr.* 131 ; 1 *Bouvier's Law Dic.* 527 ; 1 *Bla.* 297 ; 2 *Kent* 359 ; *Walter* v. *Glats*, 29 *Iowa* 437. In my opinion, the horse when found was, according to this definition, clearly an estray. Nor do I think the case is altered by the fact that he was stolen from the plaintiff before found. This precise point was made in the case of *Patterson* v. *McVay*, 9 *Watts* 482, in which the court says : " The proceeding against a stray is *in rem*, and not against the title of any particular owner. Its object is not to inflict a penalty for letting the animal go at large, but to compensate the injury done by it, and secure the residue of the value to the owner of it. What matters it, then, that the animal was taken out of his possession without his default, when default is not the foundation of the proceeding? It is, in some respects, a charitable one, for had not the animal been secured and taken care of, it might have perished, or wandered away beyond the reach of recovery. The costs and charges must be paid, in any event, for the officers are not to be affected by considerations of theft ; and how can these be raised except by a sale, or how can there be a sale if purchasers cannot bid securely." Nor do I think it can properly be held that the person who removed the horse from the church lot, where he found him tied and apparently abandoned, to the stable of John Gildersleeve, was in any sense the owner. The case does not show that he ever claimed any interest in the horse as finder, or otherwise, or that he ever, for a moment, assumed, or claimed the right to assume control of him. It is quite evident that he did not take or remove the horse, claiming title to him as finder. On the contrary, it is

quite clear that the horse was taken and removed from motives of humanity, that he might be fed and cared for, not by the finder, but by the owner of the stable into which he was put.   One reason of an estray is said to be, that the cattle called *animalia vagrantia* may not perish.   *Viner's Abr., Vol. X, p.* 487.   Moreover, it has been held, that " if a man takes beasts as estray, and keeps them for three quarters of a year, and after they estray from him and another gets them, the first lord who keeps them for three quarters cannot retake them, because he has no property in them till he has kept them the year and day, and proclamation passed ; *quod nota bene,* for the possession of the second lord is good against him who has no property." *Ib.* 489.   I do not see why the same principle should not apply to this case, if we hold that the person who removed the horse and left him on the premises mentioned, once had title to him as finder.   That title could not last beyond the time when the possession was voluntarily abandoned, or surrendered to another.   It may be further observed, that it does not appear by the case, that John Gildersleeve knew when or by whom the horse was brought upon his premises.   The finder, on his own motion, removed the horse to Gildersleeve's premises, without, so far as appears, his knowledge, consent, or direction.   I think it may properly be asked what, under these circumstances, was to be done with the animal, if he was not to be treated as an estray ?   How was he to be disposed of ?   I think if the question were doubtful, it ought, for the security of the owner, to be resolved in favor of the proceedings under the statute concerning estrays, because thereby public record is required to be made that the animal has been taken as an estray, and after a certain time, if not reclaimed by the owner, it must be sold at public auction, and from the proceeds of sale, the legal costs and expenses are to be first paid, and the surplus paid over to the owner.   The other view, it seems to me, is contrary to the policy of the statute, and would oftentimes enable dishonest and irresponsible persons to conceal and convert to their own use stray cattle, under

circumstances which would deprive the real owner of all adequate remedy.

I have not been able to see, in the case sent up, any evidence of bad faith or dishonesty on the part of the defendant in error, or of the persons who took and disposed of the horse as an estray. In my opinion the judgment below should be affirmed, with costs.

*Judgment of the Circuit Court reversed.*